OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a petition, dated October 19, 2010, containing eight charges of professional misconduct. The respondent served an answer, dated March 8, 2011, in which he admitted some, but not all, of the factual allegations contained in the petition. He averred that he did not engage in any professional misconduct. Following a hearing, the Special Referee sustained charges one through five, seven, and eight, but did not sustain charge six.
Charges one through four emanate from a common set of factual allegations, as follows:
At all relevant times herein, the respondent maintained an Interest on Lawyer’s Account (hereinafter IOLA account) at the Bank of America in connection with his practice of law, denominated “Jerry M. Mims Attorney IOLA Fund.” Other than a small number of documents, the respondent failed to generate or maintain the required bookkeeping records for his IOLA account for the period from January 2005 through January 2008. The respondent failed to generate or maintain records specifically identifying the date, source, and description of each item deposited, as well as the date, payee, and purpose of each withdrawal or disbursement; failed to generate or maintain rec *240 ords showing the source of all funds deposited in the IOLA account, the names of all persons for whom such funds are or were held, the amounts of such funds, the description and amounts of the funds that were disbursed, and the names of all persons to whom such funds were disbursed; failed to generate or maintain copies of all retainer and compensation agreements with clients; failed to generate or maintain copies of all statements to clients or other persons showing the disbursement of funds to them or on their behalf; failed to generate or maintain copies of all bills rendered to clients; failed to generate or maintain copies of all records showing payments to lawyers, investigators, or other persons, not in his regular employ, for services rendered or performed; failed to generate or maintain copies of all retainer and closing statements filed with the Office of Court Administration; failed to maintain all checkbooks and check stubs, prenumbered canceled checks, and duplicate deposit slips; and failed to generate or maintain entries of all financial transactions in a record of receipts and disbursements in his IOLA account, in ledger books or similar records, or in any other books of account kept in the regular course of his practice, or make such entries at or near the time of the act, condition, or event recorded.
During the course of its investigation, the Grievance Committee requested that the respondent provide the financial records he was required to generate or maintain in connection with his IOLA account, and served the respondent with a subpoena directing him to produce those records. The respondent provided the Grievance Committee with some bank statements, without accompanying records, as well as a limited number of documents pertaining to a limited number of clients or matters. He otherwise failed to provide the financial records required.
Bank records pertaining to the respondent’s IOLA account for the period from January 2005 through January 2008 reflect that he made numerous cash withdrawals from that account, as follows:
Month/Year Amount
August 2005 $38,404.55
September 2005 $15,700.00
October 2005 $27,475.00
November 2005 $27,176.00
*241 Month/Year Amount
December 2005 $24,150.00
January 2006 $ 5,149.00
February 2006 $ 2,760.00
October 2006 $ 3,200.00
November 2006 $ 150.00
December 2006 $ 9,350.00
January 2007 $ 6,950.00
February 2007 $ 5,350.00
March 2007 $ 5,535.00
April 2007 $12,600.00
May 2007 $17,165.00
June 2007 $ 8,720.00
July 2007 $ 8,810.00
August 2007 $17,278.00
September 2007 $ 8,100.00
October 2007 $ 6,200.00
November 2007 $ 4,860.00
December 2007 $ 8,940.00
January 2008 $10,512.00
On or about July 8, 2005, the respondent deposited into his IOLA account a check drawn on the account of Keegan & Keegan, P.C. (hereinafter the Keegan firm), in the amount of $10,000 and payable to the respondent. These funds represented the proceeds of a personal or business loan from the Keegan firm to the respondent. The respondent disbursed these funds from his IOLA account to third parties for costs and expenses in connection with the operation of his law firm.
Based upon the foregoing, charge one alleges that the respondent failed to maintain required bookkeeping records for his attorney IOLA account, for the period from January 2005 through January 2008, in violation of Code of Professional Responsibility DR 9-102 (d) (22 NYCRR 1200.46 [d]).
Based upon the foregoing, charge two alleges that the respondent failed to produce all the financial records required by Code of Professional Responsibility DR 9-102 (d) in response to a notice and subpoena from the Grievance Committee, in violation of Code of Professional Responsibility DR 9-102 (i) (22 NYCRR 1200.46 [i]).
*242 Based upon the foregoing, charge three alleges that the respondent made withdrawals from his IOLA account other than in the required manner, in violation of Code of Professional Responsibility DR 9-102 (e) (22 NYCRR 1200.46 [e]).
Based upon the foregoing, charge four alleges that the respondent commingled funds in his IOLA account with personal or business funds, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
On or about May 24, 2004, a collections account was placed with the respondent through an entity entitled “Collect America,” an organization whose business included the purchase of charged-off consumer receivables directly and through subsidiaries, and which placed the accounts with attorneys for collection. The respondent was a member of a network of attorneys that Collect America employed in order to perform collections work. The respondent and Collect America operated pursuant to a “franchise” agreement, under which the respondent provided legal services to Collect America in connection with collection matters placed with him.
The respondent resolved a May 24, 2004 collection matter by way of a settlement, under which an entity known as National Foundation for Debt Management (hereinafter NFDM) made monthly remittances to the respondent, incident to his practice of law, on behalf of the debtor, in the amount of $204 per payment.
In or around October 2005, the franchise agreement between the respondent and Collect America was assigned to another attorney. This resulted in the reassignment of the May 24, 2004 collection matter from the respondent to successor counsel.
Between October 2005 and March 2007, NFDM continued to make the monthly periodic payments to the respondent. The respondent forwarded the checks that he received to Collect America for each month from October 2005 through August 2006.
NFDM sent the respondent monthly payments, in the amount of $204 each, for the months of September to December 2006 and January 2007. The respondent deposited each of those checks into his IOLA account. The respondent did not remit the funds from these five checks to Collect America, but instead deposited them into his IOLA account and thereafter misappropriated the NFDM funds for a use other than that for which they were intended.
In or around September 2006, the respondent received a check dated September 4, 2006, in the amount of $1,488.68, payable *243 to the Law Office of Jerry M. Mims, EC. The check was a payment to the respondent, incident to his practice of law, in connection with a collection matter that had been placed with him by Collect America prior to the reassignment of the respondent’s franchise agreement. The respondent deposited this check into an account bearing account No. xxxxxxxx8496. He has been unable to provide an explanation for the nature and location of this account. The respondent has not produced any financial records for this account. He did not remit these funds to Collect America. Rather, the respondent misappropriated these funds for a use other than that for which they were intended.
Based upon the foregoing, charge five alleges that the respondent misappropriated funds entrusted to him incident to his practice of law by using them for purposes other than those for which they were intended, in violation of Code of Frofessional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
On or about November 18, 2005, the respondent, as promisor, executed a promissory note, the terms of which obligated him to repay to Collect America the principal sum of $38,124.60, with interest at the rate of 7% per annum, amortized over 18 months, in 11 equal monthly payments commencing January 1, 2006, with a final balloon payment of the entire unpaid principal balance and all accrued and unpaid interest due December 1, 2006. The respondent defaulted on the note. In or about February 2006, Collect America commenced an action against the respondent in the District Court, Denver County, Colorado, alleging breach of contract based upon the respondent’s default on the November 18, 2005 promissory note. In or about July 2006, the respondent entered into a stipulation of settlement, which provided, in pertinent part, that the respondent agreed to a new payment schedule, and that Collect America would voluntarily discontinue the court action, but that, in the event of the respondent’s further default, a judgment would automatically be entered against him for the remaining balance, plus interest. The respondent defaulted. On or about December 12, 2006, a default judgment was entered against the respondent in the District Court, Denver County, Colorado, awarding judgment in favor of Collect America and against the respondent and his law firm, Jerry M. Mims, EC., jointly and severally, in the amount of $38,569.36, representing the principal amount of $38,188.36, plus costs in the sum of $381. As of the date of the instant petition, the respondent had failed to satisfy the judgment.
Based upon the foregoing, charge six alleges that the respondent engaged in conduct prejudicial to the administration of *244 justice by failing to satisfy a judgment incurred incident to his practice of law, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).
On or about January 19, 2006, Collect America filed a complaint against the respondent with the Grievance Committee. The substance of the complaint was the respondent’s failure to repay to Collect America the sums due and owing on the November 18, 2005 promissory note, in the principal amount of $38,124.60, plus interest. By letter dated February 7, 2006, the Grievance Committee sent the respondent a copy of the Collect America complaint, requested a written answer within 15 days, and advised the respondent that an unexcused failure to submit an answer constitutes professional misconduct independent of the merits of the complaint. No response was received. By further letter dated March 13, 2006, the respondent’s counsel advised the Grievance Committee that, in accordance with discussions with Grievance Committee counsel, the respondent had prepared a response to the complaint, which would be forwarded after review. The respondent submitted an answer to the January 19, 2006 complaint from Collect America, dated June 6, 2006.
By letter dated November 6, 2006, the Grievance Committee sent a copy of Collect America’s reply to the respondent and requested additional comments and information within 15 days. No response was received within the time allotted. By letter dated May 4, 2007, the Grievance Committee referred to its November 6, 2006 letter; noted that there had been no response; requested information identifying the specific bank account into which the subject funds had been deposited; requested bank and bookkeeping records for the six months preceding the date of the letter with respect to the account into which the subject funds had been deposited; and requested copies of the franchise agreement or agreements with Collect America.
On or about August 15, 2007, Collect America filed a supplemental complaint, alleging that the respondent had received and deposited the five checks from NFDM and failed to remit the funds, and a second supplemental complaint, dated August 20, 2007, alleging that the respondent had received and deposited the September 4, 2006 check in the amount of $1,488.68 and had failed to remit the funds.
By letter dated August 23, 2007, the Grievance Committee sent the respondent’s counsel a copy of its May 4, 2007 letter; summarized a May 10, 2007 telephone conversation during *245 which counsel was advised that documents and materials previously submitted to the Grievance Committee pertained to a prior investigation; renewed the request for records contained in the Grievance Committee’s May 4, 2007 letter; enclosed a copy of the August 15, 2007 supplemental complaint from Collect America; requested a written answer to the supplemental complaint; advised that an unexcused failure to timely cooperate with the Grievance Committee may be deemed professional misconduct; advised that an unexcused failure to maintain or produce the required bookkeeping records that had been requested may be deemed a violation of Code of Professional Responsibility DR 9-102 (j) (22 NYCRR 1200.46 [j]); and requested that the records be forwarded within 20 days.
By letter dated January 11, 2008 to the respondent’s counsel, the Grievance Committee enclosed copies of its November 6, 2006, May 4, 2007 and August 23, 2007 letters; noted that there had been no response to these letters; attached a copy of Collect America’s August 20, 2007 second supplemental complaint; and requested a written response to that complaint within 10 days, together with an explanation for the respondent’s failure to timely cooperate with the Grievance Committee; advised that an unexcused failure to cooperate may be deemed professional misconduct; and advised that an unexcused failure to maintain or produce required bookkeeping records may be deemed a violation of Code of Professional Responsibility DR 9-102 (j) (22 NYCRR 1200.46 Q]). The letter further stated that in the event the respondent did not comply, remedial action would be taken to compel his cooperation. No response was received.
On May 20, 2008, the respondent was served with a subpoena duces tecum, returnable June 25, 2008, for bank and bookkeeping records for the period from December 2005 to June 2008, pertaining to three bank accounts, including the respondent’s IOLA account. At or about that time, the respondent was also served with a judicial subpoena directing his appearance at an examination under oath (hereinafter EUO) on July 2, 2008. The respondent did not provide the requested documents on the return date of the subpoena duces tecum.
On July 2, 2008, the respondent appeared with counsel for his EUO. He produced only a portion of the subpoenaed bank and bookkeeping records. The examination was not completed and was adjourned, without date, pending the respondent’s production of several documents and records requested at the EUO.
During the July 2, 2008 EUO, the respondent was given, among other things, copies of Collect America’s supplemental *246 complaints dated August 15, 2007 and August 20, 2007, and was requested to provide written answers to those supplemental complaints.
By letter dated February 23, 2009 to the respondent’s counsel, the Grievance Committee noted that the EUO had been adjourned pending the respondent’s production of requested materials and that six months had elapsed without the requested information having been forwarded. The Grievance Committee renewed its request for the materials, including written answers to the August 15, 2007 and August 20, 2007 supplemental complaints. No response was received.
The respondent’s EUO was resumed, and conducted intermittently, on October 19, November 5, November 19, and December 15, 2009. At the continued EUO on November 19, 2009, the respondent submitted a written answer to the August 15, 2007 and August 20, 2007 supplemental complaints from Collect America. At the continued EUO on December 15, 2009, the respondent submitted a written response to the Grievance Committee’s February 23, 2009 letter.
Based upon the foregoing, charge seven alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to timely or completely cooperate with the investigation of the Grievance Committee, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).
Based upon the factual allegations of charges one through seven, charge eight alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
In view of the respondent’s admissions and the evidence adduced at the hearing, we conclude that the Special Referee properly sustained charges one through five, seven, and eight. Additionally, we find that charge six should have been sustained. As a result, charges one through eight are sustained.
In determining an appropriate measure of discipline to impose, we note that the respondent offered no evidence to support his testimony regarding his various purported hardships, and we find that his testimony did not adequately explain or mitigate the misconduct charged. Accordingly, we conclude that the respondent should be suspended from the practice of law for a period of three years.
*247 Rivera, J.P., Dillon, Angiolillo, Florio and Leventhal, JJ., concur.
Ordered that the petitioner’s motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted; and it is further,
Ordered that the respondent, Jerry M. Mims, admitted as Jerry Marvin Mims, is suspended from the practice of law for a period of three years, commencing January 11, 2013, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than July 13, 2015. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law; (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2); and (4) otherwise properly conducted himself; and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Jerry M. Mims, admitted as Jerry Marvin Mims, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another; (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority; (3) giving to another an opinion as to the law or its application or any advice in relation thereto; and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Jerry M. Mims, admitted as Jerry Marvin Mims, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).